The government is wrong to argue that a district court has no adjudicatory role to play in a pre-answer FCA motion to dismiss. In Polanski, the Supreme Court tasked district courts in the first instance with conducting a contextual inquiry to determine whether a relator has raised a constitutional challenge, and by any measure, that's an adjudicatory role. The government set the context of this case when it offered the Sullivan letter as evidence that Relator Vanderland's FCA case was interfering with settlement negotiations with Jackson HMA. The district court erred when it rejected Relator Vanderland's multiple attempts to obtain evidence to meet the government's proof. What makes this case exceptional from a standpoint of due process and different from every other government FCA dismissal case is that the government will be paid after dismissal and will be paid on the very violations that Dr. Vanderland exposed. The district court erred when it failed to consider Relator Vanderland's interest in a future settlement as part of a due process analysis required by Polanski. Further, the district court's ruling has provided the government with a powerful tool that will gut the intended purpose of the FCA, which is to encourage relators to come forward and reward them when they do so. The district court's ruling should be reversed and the case remanded with instructions. I welcome the court's questions. Court, let me ask you about what Judge Jordan's ruling should be interpreted to mean. The government intervened as Polanski says they needed to. I forget the language he used, but he dismissed the case and didn't just end it for your clients. The government asked for it to be dismissed with prejudice as to your client and without prejudice as to themselves. Is that what happened? With the district judge not having said whether the dismissal was with or without prejudice as to either party, and indeed doesn't divide up the parties in his final ruling, just enters judgment dismissing the case. That's correct, Your Honor, and that's the powerful tool that the district court handed. So prejudice and without prejudice, what was it? It was prejudice with regard to our claim. Well, that was requested, but that's not what the judge ruled. He didn't say one way or the other. That's the way that I think everybody reads and interprets the ruling. I mean, our case is over. Well, if you look at 41A, there's a presumption that it's without prejudice, that it's unstated. That is correct. That is correct. I'm asking about jurisdiction, and I don't know if you're familiar with William v. Taylor Seedengard. Do we have that problem here? Do we have a final judgment? We have a dismissal with prejudice and one without prejudice, and so it's not a final judgment. Do we have a final judgment? Your Honor, I don't think either. I hope we do. Let me take this position. Yes, we do, because I want this court to rule on this matter.  But how do we get there? I think that the way that the court ruled was that Relator Vandalin had not—his case is gone. The only thing that's left is for the government to go forward with an administrative remedy. I don't think there's any other way to interpret it. I do understand the court's concern that the word with prejudice is not in there, and I also do understand that the court is applying the standard of Rule 41A, which is it's dismissal without prejudice unless it's specifically said that. But let me help maybe with—in Polanski, the Supreme Court said that you apply Rule 41A standards overlaid by the procedural protections of the FCA. Is there anything in the False Claims Act that would help us? I don't believe there's anything that would help you address the issue that you've raised because I don't think that language is in the False Claims Act. But I think that if you look at— What's basically going on is that the government wants the right to continue with this, to revive it, should it come to that or settle it without a new lawsuit, but to leave the relator with nothing, and that's your complaint.  And the False Claims Act doesn't address what would happen in some situation like that. It doesn't address that at all, Your Honor. But if you look to C2A and look at all the cases that have interpreted C2A, any time that the government comes in and moves to dismiss, it's with prejudice. Essentially, the case is over. That's what they moved for. And again, in all those cases, the government took nothing. The government literally walked away. Now, you're right. What makes this case unique is that the government is going to continue, and they're going to get paid, and they're going to get paid by virtue of an administrative settlement. I brought you down enough on that. Why don't you move on? Well, Your Honor, what I'd like to address first is the source of the court's adjudicatory role. In Hellsouth v. Eli Lilly, this court opined that the term hearing under the False Claims Act means just that judicial involvement in an action. There's a dispute between the government and myself regarding what Polanski says, specifically what Polanski says in footnote 4. Polanski, as I've said, in Polanski, the Supreme Court said, you must use the procedural framework of the FCA notice and hearing to apply Rule 41 standards. Also must take into account the relator's interest when conducting proper terms, when looking at the proper terms for dismissal. That's the proper terms analysis. So if the court has got to conduct that analysis, it's got to take some type of adjudicatory role. It's got to decide something. And I believe that's exactly what footnote 4 in Polanski says. And if you look at what footnote 4 is based on, it's based on footnote 16 out of the underlying Third Circuit case. And the Third Circuit said it would be counterintuitive. It would be a counterintuitive conclusion for district court to hold a hearing on a pre-answer government motion to dismiss, of which it has no substantive role. So Polanski in the Third Circuit and Polanski at the Supreme Court affirms that the court has an adjudicatory role. And in this case, the district court believed that it had some role to play and did not give the deference to the government that the government asked for. This takes us into our due process argument. And the cornerstone or the basis of due process in this case is that Relator Vandalin has an interest in the lawsuit. His interests have got to be taken into account, and that's where due process originates. The government wants to argue that we made the argument at the district court that our due process argument was our right to obtain discovery. That is not true. Our due process arises from the interest in the lawsuit, which Polanski said the court must consider when it's looking at a government motion to dismiss. In the city of Bastrop, this court said that procedural due process is flexible, but it must involve an opportunity to be heard at a meaningful time and in a meaningful manner. Let me say this. I'm not up here advocating for an evidentiary hearing in order to comply with due process in every false claims dismissal case. I think it's a sliding scale. It's somewhere between the judge taking action based on the briefs and having an in-person hearing and having a full-blown evidentiary hearing. That's what due process requires. And in our particular case, since the government relied on evidence and relied on letters indicating that settlement negotiations had been going on for almost three years prior to the time that letter was written, we should have had some opportunity to get discovery in the case in order to meet the government's proof. The judge interpreted that letter as nothing more than Jackson HMA suggesting that the government go through with this motion to dismiss. Again, that doesn't comport with the requirements of due process that this court established. That's not an opportunity to be heard in a meaningful manner to allow the judge to interpret evidence that has been offered by one side and deprive the other side of the ability to obtain evidence to meet the proof. I will also say this. If you look into the judge's opinion, he did not even address one of our due process arguments. He did not even address the issue of the exceptional nature of this case from a due process standpoint that the government will actually get paid. He did not address that. He did not apply the Matthews factors. He didn't cite to the City of Bastrop case, which we cited to him. He didn't cite Matthews v. Eldridge. So the judge really didn't undertake a proper analysis of our due process argument. Well, it's kind of one-on-one. The appeal is from the judgment, not from the reasons. I tell my law clerks that all the time. The appeal is from the judgment, not from the reasons. Some judges say more, some say less, et cetera, et cetera. It's a rare day that we're going to reverse something because the judge didn't say X. We assume that in all the goings-on judgments, and obviously it's helpful where a judge mentions something specific, but sort of definitionally the judge is going through the arguments, et cetera, et cetera. And it's the judgment itself, which if you get relief, based on whether that judgment itself is infirm here. This is different because normally when we talk about motion to dismiss, we're not talking about evidence. I mean, typically when you talk about a motion to dismiss, you're talking about what's pled. And so this whole MTA, this whole deal is very different in that sense. But so much of what you're saying is that the court didn't allow discovery in order for you to put forth the due process claims and so forth. But I'm assuming all that was argued to the judge, right? Yes, it was argued. What was his response, notwithstanding what's in the opinion, to your points about? Sure. I think what the judge did was we had two exceptional case arguments, one of which was that, as the court is aware of the facts, this case originates out of Mississippi. We're dealing with doctors who presented, who falsely certified that they presented to treat African American and other minority patients and sent them on their way to UMC. We're talking about minor motor vehicle accident cases, the typical types of cases that this hospital was required to treat under MTAL. That's what makes this case exceptional. But the other component, and the judge did discuss that. And that's why, if you want to look to the judgment, that's in there. That's in there. But he never discussed from a standpoint of due process the fact that the government's going to get paid and the unique nature of this case because, in his mind, he asked, was there a settlement in place? Counsel? What is the fact that the government is going to get paid in form of the due process argument? I think that raises due process to another level because if you look at Polanski. You're basically saying this is not fair? No, I'm going beyond that. Okay. Okay. And if you look at Polanski, they talk about due process arising from the nature of the interest in the case.  So that's what we're talking about. But I'm just trying to get my head around the, quote, due process argument. Because as you point out, most of the time the case is over. The government doesn't keep going. Here, as you say, it's different. The government's going to keep motoring, get its money, and your client's left out when he's the one who brought it to the attention in the first place, right? That's correct. And the government is correct to say that the nature of the interest in the case, as it relates just the interest in the claim itself, that could arise in every case. So I've got to go beyond that. And the nature of our interest is we're going to be deprived of a right to participate in an administrative settlement, which is our right under 3730C25. And we've got that right to participate in a settlement. And if this case is dismissed, I have a concern as to whether or not we would be able to come in at a subsequent point and make a claim. Now, the district court judge said in his opinion that he thought that if there was a settlement, if the government got paid, that our rights would be elevated and we would be able to come in and make a claim. All right. Articulate for me what you want the holding of the penalty to be here. One of two things. I would like the court to reverse and render an order that the court hold an evidentiary hearing under these circumstances to allow us to explore our theory that they're trying to set up. What are we rendering? What are we rendering? Well, instructing, reversing and instructing the court under these circumstances. I have offered an alternative because I do understand that at some point the government can settle the case and they have discretion to do that. Under the proper terms analysis, which is the Rule 41 overlay over the False Claims Act, under proper terms analysis, the court could dismiss on proper terms. So you could reverse with instruction that the court take a look at this case and set proper terms to protect our interest should the claim be settled either through an administrative proceeding in the future. Because the judge did agree with me. He said, I agree with Mr. Welsh. If the government gets paid, then he may have a right to claim those proceeds. Now, the judge said, but he said, I don't have that issue in front of me because there is no settlement. And I think this is a very conscientious judge. He's not going to do anything unless he has a case that he can point to from this court giving him the authority to do it. So that would be the alternative to reverse with those instructions. Okay. Well, that's helpful. Thank you very much. Thank you. All right. Mr. Baldy. Thank you. May it please the court, Maxwell Baldy for the United States. My friend started by saying that the government is going to get paid on the very violations that were later exposed. And I think there's two misconceptions in there that I want to clarify. The first is the idea that the government is, quote, going to get paid. I don't know what's going to happen. The Inspector General for Health and Human Services has discretion to impose civil penalties. It's not mandatory. And I can't tell you what they're going to do. They may impose penalties. They may not. There may be a settlement. They may have an ALJ hearing. I don't know how that's going to go. The other thing is the violations that were later exposed. Were later, I think it's fair to say, blew the whistle twice. The first was reporting EMTALA violations to the government, to Health and Human Services. And an EMTALA violation occurs when a hospital in an emergency room fails to treat or stabilize a patient that is capable of treating in an emergency circumstance. And there's a negligence standard there. And that's an EMTALA violation. And the government enforces those through civil penalties. Relator also then alleged there were violations of the False Claims Act. The claims that the government came and dismissed were under the False Claims Act. They weren't under EMTALA. No one has referred any false claims to the Inspector General of HHS. No one is talking about that. And so there's sort of a smushing together in Relator's argument of these False Claims Act violations, these claims that sound in fraud, and the EMTALA violations. But they're separate. And it's important that they're separate. Because the Relator would have no right, if HHS comes in and imposes civil monetary penalties for an EMTALA violation. Even though the Relator did a valiant thing in blowing the whistle on that, EMTALA is not a scheme that comes with government bounty. He's entitled to no portion of those penalties. He would be entitled to a portion if he had a viable claim sounding in fraud that went to judgment or was settled. But we don't think he does. And we come in and exercise our right to shut down the case on that basis. So I think to the extent that Relator argues the case is exceptional because of that possibility, that's just not the case. And I want to make sure that distinction is clear. Well, he quotes Judge Jordan as saying, in some way, that there could be a possibility that if ultimately there is money in this case that had stayed, not been dismissed, they would have had a share in it. It might be a way for these plaintiffs to defer this Relator and participate in that. Is that a possibility? So, I don't think so. And we point in our... I don't think so either, so I'm wondering. So we point in our brief to the DC Circuit's NOVO-AS case, which I think does a good job of distinguishing between... The government often has multiple routes to pursue enforcement. In that case, we had a False Claims Act settlement for pharmaceutical fraud. And then we also had a regulatory claim under the Food, Drug, and Cosmetics Act. And the Relator said, I want a share of that too because they're the same drugs and similar facts. And the DC Circuit explained how the text of the False Claims Act compels, like, the only thing you get is for causes of accident, standing, and fraud. So I don't think there's any possibility here of the Relator participating in sort of the only settlement that's being contemplated. Here, the idea of a claim... But that issue was in front of Judge Jordan. Yes. That there's a possibility of money that, if the case were not dismissed and preceded as a False Claims Act case, plaintiffs might be able... If it was ultimately recovered, plaintiffs would share in that. And that same money might be paid after I, Dan Jordan, dismiss this False Claims Act case. That was before him. Right. So if there was a later settlement... What else could he have done? I don't think he had any alternative here. Well, because of your reading of your right to dismiss. Right. I don't think he... I think he gave them far more process than was required. I don't think he had any adjudicatory role absent deciding whether the constitutional bedrock had been, you know, breached. The Polanski exception you're talking about? So Polanski said... interpreted how C2A works. And what it said is that the procedure for dismissal comes from subparagraph C2A. But the framework, the substantive standard, comes from Rule 41. And Rule 41A has two parts, pre- and post-dismissal. And, you know, Polanski was a post... Sorry, pre- and post-answer. And Polanski was a post-answer case. But as the Supreme Court said, we're applying Rule 41 because it's the standard rule in the federal rules and there's no reason not to apply it. And in a pre-answer context, the plaintiff has what's usually described as an absolute right to dismiss the case. Now, here it's a little bit different because it's the government that's dismissing it and we're always bound by sort of substantive constitutional constraints. And I think where it would have a role is if you had a real allegation of some sort of... the government was acting to dismiss the case in a way that was unconstitutional. But I think, first, that really isn't what's alleged. I think, as I understand the due process argument, it's that the district court somehow violated due process by not providing enough process before it reached this decision. I mean, in this case, Relater had three rounds of written briefing and a live hearing where he presented an argument and he proffered exhibits to the court, which the court marked as exhibits and marked as received. That clearly exceeds the standard of notice and a meaningful opportunity to be heard. So I think the answer is, in this context, where there hasn't been an answer or a motion for summary judgment filed by the defendant, this is basically an absolute right. And so there was just... there was nothing for the district court to do. If I could... I think I maybe haven't totally answered your question, Judge Southwick, so... I'm sure there's a concern here. I mean, I see the argument made by Fosen-Council to have some traction, but I'm not sure how it works in the false claim at scenario. Polanski certainly gives extraordinary authority to the government, recognizes what seemingly was already there under the statute. And I... when I said I maybe alluded too quickly that I didn't see how they would have a later right to this just because I don't see the tools that are available. I'm looking for some help. Yes, yes. So let me answer this both generally and specifically for this case. In general, if it's dismissed and there's a later settlement, we... you know, the relator has sort of the rights under subparagraph C-5 for an alternate remedy. So if there's a later settlement of fraud claims... After the case is dismissed. After the case is dismissed, we say that the mechanism to address that is provided in Rule 60B. And you can file a post-judgment motion and say the case should be reopened so that I can file an alternate remedy claim. And... Is that done? Is a case law where that's been done? There are cases that we cite to... I think all cases where the motion was denied for various reasons, but we can see that this is the mechanism. Now, in many cases, that won't be successful because there won't be a successful claim, but there's a possibility there of reopening. And I think in general, look, the government wants to benefit when relators bring forward meritorious claims. We are not trying to do things that might have the effect of discouraging relators from whistleblowing and bringing forward valid claims. That's not what we want to do. I mean, this is an odd case where we're arguing against the relator, but usually I'd be sitting on their side of the lectern. I think specifically with this case, there is really no possibility of it coming back. And for the very simple reason that the statute of limitations has long since run for these claims. And I think this might also answer your question about whether the judgment is truly final. The statute... There's a 60-year statute of limitations under the False Claims Act. We're talking about events that occurred in 2013. So at some point in 2019, before the district court entered its initial order, the statute of limitations had run, and there was really no possibility of it bringing these claims back. So the idea that somehow we are, you know, 12 years later going to settle claims that are time-barred, I think it's just... is not a realistic possibility. Do you have any response to what I started in discussing with Mr. Welch on what actually was the nature of Judge Hearne's dismissal? And you were alluding to it with or without prejudice. You have the presumptions under Rule 41. You have the request in your motion to dismiss where you want it to be dismissed without prejudice and the relayed to or with prejudice. That creates this scenario, the trap that we discussed in our in-back opinion of Williams Taylor Seidenbach, that you don't have a final judgment. And you're saying it's effectively final because statute of limitations, whatever else, but that's not how we interpret final judgments, that, well, yeah, maybe not final, but you can't bring it again, so it's final. Well, I would say, I guess, two things, Your Honor. The first, and it's a simple answer, but, you know, when the government moved... I go simple. That's good. The government moved to dismiss with prejudice as to later or not without prejudice as to the government, and the district court's order said the motion is granted. It didn't say it's granted in part except that it's actually without prejudice. It said it was granted, and so, you know, I think that's the natural way to read it. And then the other thing I would say, and I acknowledge I have not read the on-bank decision you're talking about. I deal with finality, but that's just... that wasn't briefed, and it's not... I'm shooting from the hip here a little bit. But what I will say is that my understanding in general of the question of, you know, the appealability of a judgment without prejudice is the idea that it's not truly final because it can be refiled. And where it absolutely cannot be refiled, I think that's a final judgment, and I think you have a valid jurisdiction here. Thank you. I got your answer. I mean, I... I got it. Thank you. You didn't accept it, necessarily, but I got it. That's all I can ask for. So, you know, I don't want to take up too much more time if you don't have other questions. I just... I think I want to finish by pointing out, you know, C2A gives the government broad solution. In this case, which was... where we moved to dismiss before Polanski, before the Fifth Circuit had even weighed in and said what was required when there were, you know, some district court opinions that seemed to require a whole lot of us, we came forward and we provided reasons. And whatever standard applies, I think we've clearly met it here. The... but I do think that what... the only way to read Polanski, where 436, it says that you apply Rule 41, except that you have to do it through the procedures of C2A, is that this pre- and post-answer distinction holds and that there is no adjudicatory role without a... unless there's these real constitutional allegations where the adjudicatory role is, you know, is this... is the government violating the Constitution? And so I think there's... this is something that the district court can... could have handled completely on papers. The fact that it did three rounds of briefing in a live argument is just more procedure than the relator was entitled to. Well, two questions. One, the way you described the claims and the time frame and not knowing what the inspector general might do either before or now. I mean, it sounds like you're saying, in effect, this is over. I mean, the fraud claims, I think, are effectively over. Now, I want to be careful here because, you know, the discretion to, like, settle any fraud claim rests with the attorney general, and I can't bind the attorney general never to settle it. But I think, effectively, on these facts, you know, based on the idea that we've come forward in open court and said we think these allegations don't state valid claims, I think these are effectively over. Okay. Well, I'm just saying, as a practical matter, we're talking about 2013, this is 2025. You know, the legal issues is just... Putting aside the administration's change, I'm just saying that's a lot of time in here given the allegations that were made, et cetera, et cetera. If somebody were going to do something, the government is slow, but, you know, it seemed that... There's a lot of time that has gone on to either pursue the claims, collect the money, whatever. Anyway, that was just a question. Secondly, assuming that, you know, we found traction in counsel officers' arguments, I mean, what in the world would happen back in Judge Turin's court? He said it had been three rounds of briefing, et cetera, et cetera. I mean, what would that look like? What would be left to happen? I genuinely don't know, Your Honor. I mean, you could obviously issue whatever instructions and he could implement them, but I don't... I don't think that he has the authority to condition the judgment on terms it considers proper because this is 41A1 and not 41A2. So I don't think you could remand it having conditioned the dismissal in terms of allowing some sort of... Well, that's what I'm asking. In real time, judges don't want to be reversed, but if it happens, they say, just tell me what to do and I'll do it. You know, they don't want you to say, okay, send it back to you, figure it out. You know, that's what I'm saying. I'm not being facetious, but I'm saying, if we'd send it back, you know, what would the instructions be? I genuinely don't know, Your Honor, and I'm trying to... I'm not sure if I understand exactly what the theory would be because at one point I heard my friend say that you should remand it for discovery into some sort of state administrative enforcement proceedings, which seems problematic on any number of levels. I don't... Isn't the discovery to find out more about this alleged supposed settlement and to see if you're fixing to, to use a mischievous word, settle this case and there's about to be money? Is that what the... I mean, perhaps, but as I said, no one has made any allegations. There's nothing in the record, and everything in the record is clear that the only thing anyone has ever talked about settling is penalties for EMTALA violations, for negligently or whatever failing to stabilize a patient, and he has no part of that. You know, the idea that the government's also trying to settle fraud claims, I think, is... That's just out of whole cloth. There is nothing anywhere in the record to suggest that. And I will also say we have, you know, in the record in district court representations from trial counsel and from defendants counsel saying that this is all they're talking about and there has been no settlement. I'm making the same representation to you now. I spoke to counsel at HHS, you know, before I filed my brief and have confirmed that there's been no settlement. So that's, you know, I don't know what discovery is going to get you other than a lot of really, you know, a lot of privilege fights over, you know, the government's deliberative process and attorney-client privilege and a whole lot of other things. Okay. All right. Well, that's helpful. As I said, I'm struggling with, I mean, assuming arguendo counsel's right, I just don't know what we tell the trial judge, frankly. And to me, it's pointless to just send it back and not give some kind of instruction or guidance, but we're not going to make him up out of a whole car. You know, whatever we say, it's got to be based on what the case is. I mean, in other words, intuitively I might agree with counsel, feel like this is a rotten deal. He turned to me and he blew the whistle. What they were doing was, you know, bad stuff, et cetera. He ends up on the outs, the government goes down the road, et cetera, et cetera. And whether this due process really means I ought to get some of the money, I don't know. But the point being, even if I thought this right, I just don't know what the instruction to the district judge would be, which, when he comes back up, he can respond to it. But that's what I wanted to know. That's why I said as a practical matter, it's over. Yeah. I see my time's almost up. I will say two things before I sit down. The first is, I don't think he's getting a raw deal because EMTALA is not one of the schemes that comes with a bounty, and that's all we're talking about. The second is that the way to avoid figuring out those instructions is simply to affirm. So thank you, Your Honor. You stayed up all night for that answer. All right. Fair enough. I kind of led you down that one. All right. I'll take that. All right, Mr. Bentley. Straighten this out. Thank you, Your Honors, and may it please the Court, Michael Bentley on behalf of Jackson HMA LLC, the hospital in this litigation. I want to start, if I can, by helping the Court a little bit more on the jurisdictional question. I think if you look, as the government said, if you look at the dismissal order, it's granting motion, docket entry 80, the government's motion to dismiss with prejudice. There's a final judgment entered. Judge Jordan, you need to look no further than this particular proceeding to see what a thorough district judge he is. Severs the retaliation claim, puts it in an entirely separate suit, indicating it's out of this case. And then the other context clue, I would say, because this is a practical inquiry, is Jackson HMA, my client, had its own motion to dismiss the claims under Rule 12b-6, motion to dismiss with prejudice. When Judge Jordan gave us, when he recleared the stage, set the stage for the motion to reconsideration, he permitted us to refile that motion, which we did. He could not have, or not dealt with that motion, or denied it as moot, without viewing his dismissal under the government's motion as with prejudice. So I think there's a lot in this case to see that Judge Jordan, including his own thoroughness, again, no invitation to amend the complaint, which you would expect Judge Jordan to do if he was dismissing without prejudice. Anyway, all of the clues lead to this being a dismissal with prejudice. And the other thing I want to say, Judge Stewart, is I agree with you. If you look at this record, it's really hard to figure out what Judge Jordan would be expected to do on remand. To your point, I mean, if it's an inquiry, or to Judge Southwick's point, if it's an inquiry about this concept that some settlement has secretly occurred or might occur, I guess you could depose the Department of Justice or depose our counsel, but they appeared in court as officers of the court and answered Judge Jordan's questions about that. Judge Jordan effectively did that. They stood up, just as Mr. Baldy said, in the district court, and said there is no settlement and there's currently no settlement discussions about the False Claims Act case. So I don't know what else Judge Jordan could do, again, looking at the thoroughness and history of these proceedings, to give the relator an opportunity to explain to him what it was that should keep this case alive. Thank you. Thank you, Your Honors. Thank you. All right, back to you, Mr. Willis. Let's see if I can help get Judge Southwick where I think he wants to go. Dismissal of a case and the remedy that you would get, the money that you would get, is different from dismissal from an administrative action. We all understand that. So in order to apply apples to apples, this case has not been cited. One of the judges on the panel was involved in the case. It's the Conyers case. It was decided last year. In order to determine whether a relator can participate in an administrative settlement, the question is whether or not there's a factual overlay between the FCA case and between the claims that are settled. We've got an FCA case where we claim that the hospital violated EMTALA when its doctors lied on federal forms and said, I was there to treat this patient, and they weren't there. They certified that they were there, and they weren't, and then they got paid government money. That's a false claim. That is a false claim. Now, instead of settling the FCA component, which I think we can all see. The elephant in the room is the damages in the FCA case are probably less than the damages in the EMTALA fines case. That's all we're dealing with here. The government has looked at it and said, okay, we're going to get X amount of dollars on these FCA claims. We're going to get $50,000 per violation under EMTALA. That's a quick in and out. We'll go in and take that EMTALA fine money and be done with it. And that's what's going to happen when this case is over with. We can talk about whether there is a gentleman's agreement or isn't a gentleman's agreement. The Selden letter speaks of ongoing negotiations beginning in 2015. That's over 10 years ago. So they've discussed this, and they are hot and ready to pay the money as soon as this case is over with. Now, one of the questions, I believe, and I can't remember if it was from Judge Southwick or from Judge Stewart, was the issue of this future settlement before the court. And my concern is that in the back of your mind you may be thinking, well, this argument that Dick's making was already considered. I can take you into the record and show you that that's absolutely incorrect. This is quoting Judge Gerben. If there's a settlement of the EMTALA claims that includes language dismissing the FCA claims, which had an EMTALA basis, it seems to me, and maybe it won't be resolved today, but there would be a question under paragraph 5, and that's 3730C5, whether the relator has the same rights that he had when the case was still open. And that's in the record at 2906. Judge Gerben knew that that issue was not in front of him. Now, to answer your question, Judge Stewart, about what instruction you should give, I would tell... I think it would be appropriate. You can go ahead and tell me what you know. I think it would be appropriate to tell Judge Gerben, go back into your opinion, look at that sentence, look at what you said. Now, what can you do to make sure those rights are protected? I don't think that this court can come up with a... You've got to tell them to report a settlement within 10 days. You've got to have Mr. Welsh come and brief it within... But I still say the keys to the kingdom are not in his opinion. I'm going to just stay there. It's what he said. But, I mean, it's the judgment that's up here. I mean, I'm going to just stay speaking for myself. I'm not going to look in his opinion and say anything. I mean, if I'm convinced by your argument, it's not going to be based on what's in his opinion. Well, that's out of the transcript, Your Honor. Okay. All right. And I do understand, but I think, to be fair to the court, when you're asking was this issue before the court, the answer is no. And it's not in his judgment or not in his ruling because he said I can't make that decision. All right. I know what you've argued and read the briefs. I'm coming back. I'm not trying to be redundant. But, I mean, on the basis, we know this is different in terms of, you know, the fact scenario and all that. It is what it is. You heard the bifurcation counsel often gave about the intolerant claims, false claims, et cetera. We're clear on that. I'm still back to the point of understanding what is the legal error. I mean, I'll say it differently. I mean, we read Polonsky, but what is the controlling law that makes what Judge Jordan did here error as a matter of law for us to reverse him in a reversory manner or otherwise? Putting aside whether I or somebody had been there, done something different, but the bottom line is, you know, where's the legal error and what's the authority? We sure can't get it out of just reading Rule 41A. The authority is Polonsky. The authority and the legal error is the failure of the judge to conduct a proper terms analysis within the context of this case. Okay. You had the three rounds of briefing. You had the issues. You had the arguments. Somewhere I'll read in this transcript what you had. Judge Jordan, we need to have X, Y, what you just said. He says, Nope, I'm not giving it to you because, because, because. Is that in the record? Well, again, it's in our argument. He's saying that issue is not in front of him today, so he could not write on that issue. He didn't write on it. We were pushing you. So you want us to say it was legal error for him to fail to address that issue and address it in such a way as to give you a full-blown hearing. Is that what you're saying? No. I misunderstood the court's question. No, no, no. Again, I'm not trying to trick you at all. Trust me, I'm not. What's full-blown error is the failure to conduct a proper terms analysis as required by Polanski within the context of the government walking away after this dismissal with money and getting paid money. So the very violations that we, that Dr. Vanderland, Mr. Struble. But you want us to construe Polanski because we have this different facts pattern here. Is that what you're saying? I'm saying the Supreme Court told you to do that because they said we're not going to, if you look at Polanski, it says we're not going to give the court or describe the circumstances in which or the procedures by which the court can conduct a hearing. We've never done that under Rule 41. It's always contextual. It's always up to the district judge. There's no way that Polanski could have anticipated every circumstance where. I mean, that's typical of what the Supreme Court does, right? They decided we figured out, got that part, and I'm not an enemy of your argument. I'm just trying to get an understanding. Having been a trial judge before, and once upon a time in my life, I'm trying to get my head around what it looks like. I'm not an enemy of your argument. I'm just trying to get my head around what's raised here, what this judge did here, constancy across the board, et cetera. The fact that he didn't address some aspect is never going to be a basis. We're going to reverse and say, oops, you missed that. And we've read Polanski several times. I don't necessarily see it there. But as I asked him, I said, okay, well, what's this going to look like? You know, going back, and I'm still struggling with that. We'll read it some more. I know what you're saying about the due process. But just saying it doesn't make it so in terms of giving instruction because he didn't address the argument that's made. But, you know, that's why we put the case in the order. It's a tough case. And, Judge, again, if you look, you're relying on, I understand, you're relying on what's in the order. And if you look at the constitutional analysis, it's two sentences long. It's part of one page. When you don't conduct a proper constitutional analysis, that's error. All right, so what you want is a limited remand. You want us to do a limited remand for the district court to explicate more fully and flesh out that which he did not mention or didn't say sufficiently. Is that what you're thinking? Essentially, yes. And that's the job of this court. If the lower court doesn't conduct a proper analysis under the law, I think it's the duty of this court to send the case back and say conduct with instructions. No, what I'm saying under my scenario, one of my key questions, ask people what they want. We hear the arguments frequently. I'd be surprised how many people think that's a trick question. What do you want besides just saying reverse? And so I'm saying if the limited remand wasn't something, it wasn't you said when you were up before, you said reversion, render. Somebody did. Whatever. So I'm in between here. Okay, limited remand. Back to the judge and say, okay, limited remand for the purpose of XYZ, which means we still have a case. So then once he does what we instructed him to do and it comes back, it's still here, right? That's correct. Let me try to simplify this. Yes, sir. If we remand, do we tell the district court to see if the EMTLA can support an FCA claim? I think you can ask him to decide based on that sentence whether a relator who brought an FCA claim based on EMTLA can participate in an administrative settlement involving those same EMTLA claims. All right. Thank you, counsel, for your able arguments. You've given us a tough homework assignment, but we'll do our job and figure it out. That completes our argument in this case. Before we take up the third and last case for the morning, we'll take a short 10-minute recess, and then we'll be back on the bench to finish up.